## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Apr 27 2020, 6:01 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANTS

Crystal G. Rowe
New Albany, Indiana

Brent R. Weil
William G. Hussmann, Jr.
Evansville, Indiana

ATTORNEYS FOR APPELLEES

David E. Gray
David L. Jones
Craig R. Emig
Evansville, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

Elpers Bros. Construction & Supply, Inc. and Elpers Development, Inc.,

*Appellants-Defendants,*

v.

Deane L. Smith, II, MD and Lori A. Smith,

*Appellees-Plaintiffs.*

April 27, 2020

Court of Appeals Case No. 19A-PL-1327

Appeal from the Vanderburgh Circuit Court

The Honorable David D. Kiely, Judge

Trial Court Cause No. 82C01-1712-PL-6198

**Altice, Judge.**

# Case Summary

[1] In 2007, Deane L. Smith II, MD and Lori Smith (Homeowners) purchased a residential lot from Elpers Bros. Construction & Supply, Inc. and Elpers Development, Inc. (Builders) and built their home on it. In 2017, Homeowners filed suit in the Vanderburgh Circuit Court against Builders alleging that the geothermal system used to heat and cool their home was damaged due to problems with drainage in the subdivision and the retention pond on their property. Homeowners asserted negligence claims as well as a request for a declaratory judgment that Builders failed to comply with the subdivision plat and ordinances. After Vanderburgh County was added as a third-party defendant, Builders filed a motion for change of venue from the county. Builders also filed a motion to disqualify Homeowners' counsel, who during the course of the litigation had been appointed the Vanderburgh County Attorney. The trial court denied both motions, and Builders filed this interlocutory appeal asserting that the denials were an abuse of discretion and/or an erroneous interpretation of the law.

[2] We affirm.

# Facts & Procedural History[1]

[3] Around 2006, Builders purchased property in Vanderburgh County that they developed into a residential subdivision known as Stonegate Estates (the

---

[1] We deny Builders' request for oral argument by separate order.

Subdivision). In June 2007, Homeowners purchased Lot 1 in the Subdivision from Builders and hired Builders to construct their home on the lot. Lot 1, located on Skipping Stone Drive, includes a private lake for Homeowners' exclusive use and enjoyment. The lake also serves as the retention pond for the Subdivision and is subject to an easement for drainage of surface and storm water from other lots. Homeowners installed the coils and component parts for their geothermal heating and cooling system in the lake.

[4] During development of the Subdivision, Builders hired engineer Keith Poff and Sitecon, Inc. (collectively, the Engineers) to design the Subdivision's drainage system and to install the lake on Lot 1. The drainage and erosion control plans were submitted to Vanderburgh County, and the county's Drainage Board approved them on December 5, 2006. Pursuant to county ordinance, Vanderburgh County may dedicate roads for public use and, thus, assume responsibility for the maintenance of those roads and drainage structures. In this case, Vanderburgh County identified two streets in the Subdivision, including Skipping Stone Drive, as public roadways. On May 13, 2008, Vanderburgh County "Accepted for Maintenance" Skipping Stone Drive and the associated drainage structures within the Subdivision. *Appellants' Appendix Vol. 2* at 110, 126. Later, in May 2011, the county's Area Plan Commission released Builders' letter of credit (or performance bond) after having found "the satisfactory completion of the remaining work on the drainage facilities and other public improvements in the [Subdivision]." *Id.* at 111, 128-29.

From 2009 to 2015, Homeowners used the geothermal system to heat and cool their home. In mid-2015, they noticed excessive silt in the lake, and in December 2015 they determined that their geothermal system was not working properly, believing this was due to drainage issues in the Subdivision and deteriorating lake conditions. Homeowners hired attorneys David L. Jones and Craig R. Emig of the law firm Jones Wallace, LLC to investigate and pursue any claims associated with the geothermal system's failure. In December 2017, Homeowners filed a lawsuit in the Vanderburgh Circuit Court against Builders and the Subdivision's HOA.

The complaint alleged that the lake/retention pond was no longer usable due to sediment from upstream runoff, that Homeowners' geothermal system was damaged "and will have to be reconstructed with dredging of the lake in association with remedial measures to prevent the lake from then refilling with dirt and silt and/or relocation of the coils followed by dredging of the lake," and that "all Defendants have failed to act as required under the various agreements or to remediate the continuing damage to Plaintiffs' property, or undertake proper reconstruction and maintenance of the drainage facilities." *Id*. at 29-30. Homeowners asserted two claims: (1) a request for a declaratory judgment declaring Builders and the HOA in breach and violation of the requirements of the subdivision plat, and all applicable local and ordinances, regulations, and statutes and ordering them to immediately comply with the provisions of the subdivision plat and its conditions and to perform such corrective and remedial work as necessary to be in full compliance; and (2) a

claim that Builders negligently designed, constructed, and maintained the drainage and erosion control facilities of the Subdivision.

[7] Builders filed their answer on February 22, 2018, raising affirmative defenses, including that "the amount to be awarded, if any, should be diminished in proportion to the amount of contributory fault of the Plaintiffs and/or the contributory fault of other non-parties or Defendants whose conduct proximately contributed to the incident complained of in Plaintiffs' Complaint." *Id.* at 73. In July 2018, Homeowners replaced their geothermal system at a cost of approximately $26,000, and buried the new system's pipes in the ground, not the lake.

[8] In January or February 2019, the Vanderburgh County Commissioners appointed Jones as the Vanderburgh County Attorney, and Emig became Assistant County Attorney. On March 22, 2019, the parties participated in a mediation, which was not successful. On March 25, Builders filed a motion for leave to amend the pleadings to file a third-party complaint against Vanderburgh County and the Engineers. The same day, Builders also filed a motion to disqualify Homeowners' counsel, Jones and Emig and their law firm, under the Ind. Rules of Professional Conduct, asserting that they, as the Vanderburgh County Attorney and Assistant County Attorney, had an unwaivable conflict of interest by representing clients with adverse interests in the same litigation.

[9] On March 28, 2019, the trial court granted Builders' motion for leave to amend the pleadings, and, the next day, Builders filed their third-party complaint against Vanderburgh County and the Engineers. Builders alleged, as is relevant here, that in the course of developing the Subdivision, (1) they provided drainage and erosion control plans to Vanderburgh County and that the county's Drainage Board approved the plans on December 5, 2006, (2) on May 13, 2008, the county "Accepted for Maintenance" Skipping Stone Drive in the Subdivision, and (3) on May 5, 2011, the County inspected the Subdivision and determined that all work required by the county had been completed, releasing a letter of credit that had been held pending completion of the drainage work. Builders asserted that since Homeowners' lawsuit contended that there are defects in the drainage system, including negligent maintenance of the drainage facilities, Vanderburgh County "will be a necessary party to effectuate any relief that is necessary for the correction of said defects and may be responsible for paying a portion of the costs for any such corrective action." *Id.* at 159. On April 1, Homeowners filed a written objection, asserting that Builders' motion was without factual or legal basis and asked the court to set the matter for hearing.

[10] On April 2, 2019, Builders filed a verified motion for change of venue from Vanderburgh County based on Ind. Trial Rule 76(A), which provides that a party's motion shall be granted upon a showing that the county where the suit is pending is a party. Builders acknowledged that, under T.R. 76(C), a motion for change of venue must be made within ten days of when the issues first closed

on the merits, which in this case was on February 22, 2018 when Builders filed their Answer, but argued that, pursuant to case law, the addition of third-party defendant Vanderburgh County on March 29, 2019 "effect[ed] a change in venue" such that the original parties obtained renewed venue rights. *Id.* at 184. On April 3, Homeowners filed a written objection, asserting that Builders were not entitled to a change of venue and that Builders had misstated the law. On April 4, attorney Joseph Harrison Jr. of Massey Law Offices filed an appearance on behalf of Vanderburgh County.

[11] The trial court held a hearing on various pending motions on April 23, 2019, with the court first addressing Builders' motion to disqualify Jones and Emig and their law firm. Builders argued that Jones and Emig had a conflict of interest, namely, concurrent representation of clients with adverse interests (plaintiff Homeowners and third-party defendant Vanderburgh County), and that Ind. Rule of Professional Conduct 1.7 required their disqualification.

[12] Jones responded that when he became aware in November 2018 of the possibility that he might be appointed County Attorney, he spoke with the County Commissioners to advise them that he was already representing Homeowners in the lawsuit, that there was a possibility that various county employees would be deposed in the lawsuit or otherwise need to testify/be involved, and he would be representing Homeowners, not the county. *Transcript* at 9. He spoke with the County Engineer and County Surveyor and told them the same. Jones advised the trial court that the position of Vanderburgh County Attorney was not full-time and that his contract with

Vanderburgh County provides for potential conflicts of interest and, in that circumstance, "[t]here are several attorneys that are under contract with Vanderburgh County for just those situations," one of whom is Harrison, who entered his appearance in the present case for Vanderburgh County. *Id.*

[13] Jones told the trial court that Homeowners had consulted with several engineering experts concerning the drainage issues and, based on what the experts reported, Jones did not anticipate Homeowners making any direct claims against the county. He reiterated that he was not representing Vanderburgh County in this case, and even if he was, it would be permissible because he had obtained a signed consent and waiver from Homeowners and, at a public meeting, from the three County Commissioners. Jones presented the consent and waiver to the trial court at the hearing.

[14] Builders objected to the consent and waiver form, having no prior knowledge of it and noting that they did not know the extent of any disclosure that was made by Jones to Homeowners or to the county. Builders further maintained that the conflict in this case was not waivable because of direct claims that Homeowners have, or should have, against the county. Jones responded:

> If at any time this were to arise, that I think there's a claim against the County, I would immediately withdraw and advise, advise the Smith[s] that they need to get other counsel. . . . If at any time the County thinks that there's a claim there against the Smith's, they've got independent counsel to bring the case.

*Id*. at 25.

[15] The trial court asked Harrison, who had filed an appearance for Vanderburgh County in this case and preceded Jones as the Vanderburgh County Attorney, for his opinion as to the extent of Jones's representation of the county. Harrison stated that he was the Vanderburgh County Attorney from 2012 to 2018, and while "the County was a lot of [his] work," he represented "many other clients obviously." *Id*. at 28. He told the court, "with regard to this case, [Jones] is not representing the County, I am." *Id*. at 27.

[16] Concerning the motion for change of venue, Builders argued that Indiana caselaw provides that, when a party that has been added to the litigation effects a change of venue, the original parties obtain renewed venue rights so long as they have not previously exercised those rights, "[a]nd so the issue is going to be for this Court . . . what does effect a change of venue mean." *Id*. at 31. Builders urged that the addition of Vanderburgh County created a new situation, or "effectuated a change in venue," entitling them to renewed venue rights because having the county as a party "puts [the trial court] in an untenable position, to have to rule for or against the County[.]" *Id*. Homeowners maintained that only if the newly-added, a/k/a "second generation," defendant (here, Vanderburgh County) had filed for a change of venue would Builders, as an original party, have had renewed venue rights allowing them to seek a change of venue, and here the county did not seek a change of venue.

[17] The trial court took the matters under advisement and then issued orders the same day summarily denying Builders' two motions. On May 16, the trial

court granted Builders' request to certify the orders for interlocutory appeal, finding that the following presented substantial questions of law, the early determination of which will serve the interests of justice and judicial economy:

> [W]hether under Indiana Trial Rule 76, which provides that the "motion (for change of venue) shall be granted only upon a showing that the county where the suit is pending is a party" applies when a Third Party complaint is filed in a case first naming the county in which the case is pending as a Third Party Defendant.

> [W]hether Attorneys who are the Appointed County Attorney and Assistant County Attorney for Vanderburgh County have a conflict of interest which requires their disqualification under Indiana Rule of Professional Conduct 1.7 when they bring a case under Indiana Comparative Fault law on behalf of plaintiffs who may have a claim against Vanderburgh County for negligent maintenance of drainage facilities; and further when they represent plaintiffs who are requesting that the Court issue a declaratory Judgment that remedial action be taken to change a drainage plan which Vanderburgh County has previously approved and which may involve change to drainage structures which Vanderburgh County has by contract and ordinance agreed to maintain.

*Appellant's Appendix Vol. 2* at 19, 22. This court accepted jurisdiction, and Builders now appeal.

# Discussion & Decision

## *I. Attorney Disqualification*

[18] Builders argue that the trial court should have granted their motion to disqualify Homeowners' counsel and law firm due to a conflict of interest. Our supreme court has described a trial court's authority to disqualify an attorney "as necessary to prevent 'insult and gross violations of decorum.'" *Gerald v. Turnock Plumbing, Heating & Cooling, LLC.*, 768 N.E.2d 498, 501 (Ind. Ct. App. 2002) (quoting *Cincinnati Ins. Co. v. Wills*, 717 N.E.2d 151, 154 (Ind. 1999) (citations omitted)). A trial court may disqualify an attorney for a violation of the Rules of Professional Conduct that arises from the attorney's representation before the court. *Id.* We will review a trial court's decision under an abuse of discretion standard. *Reed v. Hoosier Health Sys., Inc.*, 825 N.E.2d 408, 411 (Ind. 2005); *Robertson v. Wittenmyer*, 736 N.E.2d 804, 806 (Ind. Ct. App. 2000).

[19] The parties agree that the applicable Rule of Professional Conduct is Rule 1.7, which provides in relevant part:

> (a) Except as provided in paragraph (b) a lawyer should not represent a client if the representation involves a concurrent conflict of interest. *A concurrent conflict of interest exists if:*
>
> > (1) The representation of one client will be directly adverse to another client; or
>
> > (2) There is a significant risk that the representation of one or more clients will be materially limited by the lawyer's

responsibilities to another client, a former client, or a third person[.]

(b) *Notwithstanding the existence of a concurrent conflict of interest under paragraph (a) a lawyer may represent a client if:*

(1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;

(2) the representation is not prohibited by law;

(3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and

(4) each affected client gives informed consent, confirmed in writing.

(Emphases added).

[20] Builders suggest that "this action involves the issue of whether an attorney . . . may represent two clients (i.e., the Smiths and Vanderburgh County) with adverse interests, in the same litigation." *Appellant's Brief* at 20. That manner of framing of the issue, however, presupposes that Jones in fact *does* represent Vanderburgh County in this action; we believe that whether Jones represents Vanderburgh County in the present lawsuit, by virtue of his appointment as County Attorney, is the threshold issue that needs to be decided. Based on the record before us, we conclude that he does not.

[21] The record indicates that the Vanderburgh County Attorney is a part-time position, thus likely requiring the County Attorney to maintain a practice representing other individuals or entities besides the county. Jones stated at the hearing that his contract with Vanderburgh County,[2] as did the contract of his predecessors, expressly addresses the potential for conflicts of interest and that, to that end, several other local attorneys have a contract with Vanderburgh County allowing them to file an appearance in this type of situation. Here, Harrison filed an appearance for Vanderburgh County days after Builders filed a third-party complaint against it, and at no time did Jones or Emig enter an appearance for Vanderburgh County. Jones expressly stated at hearing that (1) he did not represent Vanderburgh County in this action, (2) he told the County Commissioners as early as November 2018 that he would not be representing Vanderburgh County in this action, and (3) he told various county employees that if there came a time that they needed to be deposed or testify, that he would not be representing them and that another attorney would be in that role.

[22] Harrison, who preceded Jones as the County Attorney, stated at the hearing that, even though Jones is the "main" County Attorney, "with regard to this case, [Jones] is not representing the County, I am." *Transcript* at 27; *see also id.* ("[H]e's not representing the County in this case."). Harrison said that he

---

[2] Jones's contract is not in the record before us.

agreed with and supported Jones's assertion that it was not a conflict of interest for Jones to stay in the case.

[23] Based on this record, we conclude that Jones was not representing Vanderburgh County in this action. However, even if he was, thus resulting in a concurrent conflict of interest under Subsection (a) of Rule 1.7, the record establishes that the conditions of Subsection (b) were met to permit such representation. Specifically, Jones's answers to the trial court's questions at the hearing indicated he represented only Homeowners and not the County in this action, and he provided a written consent and waiver to the court, signed by Homeowners[3] and by the County Commissioners. With regard to the matter of direct claims between Homeowners and the county, which is precluded by Subsection (b)(3), Jones assured the trial court that, after consulting with experts early in the case, he did not believe that Homeowners had a direct claim against the county, but if one should arise, he would withdraw.

[24] Given the facts and circumstances of this case, we find that the trial court's decision to deny Builders' motion to disqualify Jones, as well as Emig and their firm, was not an abuse of discretion.

---

[3] We note that Mrs. Smith, one of the Homeowners, was present at the hearing and Jones was prepared to present her testimony as to the extent of his disclosure to her about the situation and her consent thereto, but the trial court determined that such testimony was not necessary.

## II. Change of Venue

Builders argue that the trial court erred when it denied their motion for change of venue from the county. T.R. 76 provides in pertinent part:

> (A) In civil actions where the venue may be changed from the county, such change of venue from the county may be had only upon the filing of a verified motion specifically stating the grounds therefor by the party requesting the change. *The motion shall be granted only upon a showing that the county where suit is pending is a party* or that the party seeking the change will be unlikely to receive a fair trial on account of local prejudice or bias regarding a party or the claim or defense presented by a party. A party shall be entitled to only one change of venue from the county. . . .

> * * *

> (C) In any action except criminal *no . . . change of venue from the county shall be granted except within the time herein provided. Any such application for change of judge (or change of venue) shall be filed not later than ten [10] days after the issues are first closed on the merits.* Except:

>> (6) if the moving party first obtains knowledge of the grounds for change of venue from the county or judge after the time above limited, he may file said application, which must be verified personally by the party himself, specifically alleging when the cause was first discovered, how discovered, the facts showing the grounds for a change, and why such cause could not have been discovered before by the exercise of due diligence. Any opposing party shall have the right to file counter-affidavits on such issue within ten [10] days[.]

(Emphases added). T.R. 76 "is intended to guarantee a fair and impartial trial" and "is also designed to avoid protracted litigation by imposing time limits after which a change of venue shall be denied." *State ex rel. Prosser v. Lake Circuit Court*, 565 N.E.2d 751, 754 (Ind. 1991).

A denial of a motion for change of venue is reviewed for an abuse of discretion. T.R. 76(A); *Scott v. Consol. City of Indianapolis*, 833 N.E.2d 1094, 1098-99 (Ind. Ct. App. 2005), *trans. denied*. An abuse of discretion occurs when the trial court's decision is against the logic and circumstances before it. *Weinberger v. Boyer*, 956 N.E.2d 1095, 1103 (Ind. Ct. App. 2011), *trans. denied*.

Builders contend that their motion should have been granted because Vanderburgh County is a party to the lawsuit that is pending in Vanderburgh Circuit Court and that, under such circumstances, T.R. 76(A) mandates a change in venue. Homeowners maintain that Builders' motion is untimely and that the trial court properly denied it. We agree with Homeowners.

T.R. 76(C) says that "no . . . change of venue from the county shall be granted except within the time herein provided" and any motion for change of venue "shall be filed not later than ten days after the issues are first closed on the merits" with six listed exceptions. In this case, the issues were first closed on the merits when Builders filed their Answer on February 22, 2018. *See Mann v. Russell's Trailer Repair, Inc.*, 787 N.E.2d 922, 925 (Ind. Ct. App. 2003) (issues are first closed on the merits when the defendant files an answer), *trans. denied*.

[29] The only one of the six exceptions that is potentially applicable allows a party who "first obtains knowledge of the grounds for change of venue from the county . . . after the time above" to file a motion for change of venue "which must be verified personally by the party" and "specifically alleg[e] when the cause was first discovered, how discovered, the facts showing the grounds for a change, and why such cause could not have been discovered before by the exercise of due diligence." T.R. 76(C)(6). Although Builders represented to the trial court that they learned during discovery of the necessity of bringing in Vanderburgh County as a third-party defendant, they did not specify when that discovery occurred or otherwise comply with the specific requirements of T.R. 76(C)(6), making that exception inapplicable to this case. Accordingly, Builders' motion for change of venue was filed outside of the prescribed time limitations of T.R. 76.

[30] Builders urge us to find that they nevertheless are entitled to a change of venue based upon caselaw. Specifically, Builders refer us to cases holding that a later-added or second-generation defendant is entitled to an automatic change of venue under T.R. 76(A), and "when a party who has been added to the litigation after the original filings *effects a change of venue*, the original parties obtain renewed venue rights if they have not previously exercised their rights." *See Prosser*, 565 N.E.2d at 754 (citing *State ex rel. York v. Newton Circuit Court*, 531 N.E.2d 198 (Ind. 1988) (emphasis added)); *see also Am. Fed'n of State, Cty. & Mun. Employees, AFL-CIO v. City of Gary*, 578 N.E.2d 365, 367 (Ind. Ct. App. 1991).

[31] Builders argue that Vanderburgh County "effected (or effectuated) a change of venue" by its mere addition to the case, and, therefore, they (Builders) as original parties received renewed venue rights. *Appellants' Brief* at 18. We disagree with this interpretation. The context and language of the caselaw reflects that the addition of a party does not alone effect a change of venue; rather, a change is effected when the newly-added party requests and receives a change of venue. In that instance, the original parties would then obtain renewed venue rights. *See Prosser*, 565 N.E.2d at 754 (where newly-added party "chose[] not to seek a change of venue", the original plaintiff, IDEM, was "entitled only to the forum it chose" and, therefore, trial court properly denied IDEM's motion for change of venue because it was untimely and IDEM was not a second generation defendant). Here, Vanderburgh County, a new or second-generation defendant, did not request or receive – that is did not effect – a change of venue. Thus, the original parties, including Builders, did not obtain renewed venue rights. Consequently, the trial court properly denied Builders' motion for change of venue.

[32] To the extent that Builders argue that the circumstances resulting in their need or desire for a change in venue did not surface until well past the ten-day time limit, our courts have recognized that "[t]he opportunity to file a motion for change of judge outside the ten day time limit is provided for in [Subsection (C)(6).]" *Weinberger*, 956 N.E.2d at 1103 (rejecting defendants' claim that it was impossible for them to change venue within the rule's time limit because circumstances resulting in the motion for change of judge did not emerge until

five days prior to trial); *see also Lake Cty. Juvenile Det. Ctr. v. J.M.D.,* 704 N.E.2d 149, 151 (Ind. Ct. App. 1999) (J. Staton's dissent observing that the time limits of T.R. 76(C) are unambiguous and "[t]o the extent that T.R. 76(C) is inequitable as applied to the facts of this case, only the [S]upreme [C]ourt may address this inequity by amending the rule."). As discussed above, Builders did not comply with the requirements of Subsection (C)(6). Accordingly, we find that the trial court did not abuse its discretion when it denied Builders' motion to change venue from the county.

[33] Judgment affirmed.

Bradford, C.J. and Robb, J., concur.